UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Alfonso Staton, #241380,         )<br>                                 )<br>                    Petitioner,    )<br>                                 )<br>vs.                              )<br>                                 )<br>Warden Michael McCall,           )<br>                                 )<br>                    Respondent.  )<br>_____) | C/A No. 5:12-2483-GRA-KDW<br><br>REPORT AND RECOMMENDATION |

Petitioner, Alfonso Staton ("Petitioner" or "Staton"), a state prisoner, filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) DSC for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment, ECF Nos. 24, 25, and Petitioner's Motion to Stay Proceedings Pending the Exhaustion of State Remedies ("Motion to Stay"), ECF No. 43. Respondent opposes the Motion, ECF No. 45, and Petitioner has submitted a Reply, ECF No. 46.

Originally proceeding pro se, Petitioner brought this habeas action on August 24, 2012.[1] On January 4, 2013, Respondent filed a Return and a Motion for Summary Judgment. ECF Nos. 24, 25. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 26. Still proceeding pro se, Petitioner requested and obtained several extensions of time within which to respond to the

---

[1] This filing date reflects that the envelope containing the Petition was stamped as having been received on August 24, 2012, at the Lee Correctional Institution mailroom. Pet. Attach. 2, ECF No. 1-2. *Houston v. Lack*, 487 U.S. 266 (1988) (holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court). The Petition was docketed by the court on August 28, 2012. Pet., ECF No. 1.

Return and Motion for Summary Judgment. Tristan Shaffer, Esq. filed a Notice of Appearance on Petitioner's behalf on April 5, 2013, ECF No. 38, and requested an extension of time to file a response to the pending Return and Motion for Summary Judgment, ECF No. 39. The court granted that request, making Petitioner's response to the Motion for Summary Judgment due May 2, 2013. ECF No. 40. On that date, Petitioner filed the Motion to Stay as well as a request that he not be required to respond to the Motion for Summary Judgment while the Motion to Stay remained pending. ECF Nos. 43, 44. Being advised of Respondent's consent to the extension of time, the court granted that request. Accordingly, Petitioner has not filed a substantive response to the Motion for Summary Judgment. Having reviewed the parties' filings, the undersigned recommends the following: Petitioner's Motion to Stay, ECF No. 43, be *granted* and this matter be stayed as further set forth herein; and Respondent's Motion for Summary Judgment, ECF No. 25, be *denied with leave to refile* subsequent to the lift of the stay.

I.     Procedural History

        A.     Criminal Proceedings

Petitioner is currently confined in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Marlboro County. The Marlboro County grand jury indicted Petitioner for kidnapping (1996-GS-34-0979, count 1), murder (1996-GS-34-0979, count 2), 1st-degree criminal sexual conduct (1996-GS-34-0979, count 3), and criminal conspiracy (1996-GS-34-0979, count 4) in the November 1994 murder of Darlene Davis Patterson ("Victim"). *See* App. 1905-07.[2]

---

[2] Reference to "App." herein is reference to the record on appeal in the direct appeal of Petitioner's conviction and sentence. The four-volume record is available at ECF Nos. 24-2 through 24-16.

1. Trial and Sentencing

Petitioner and co-defendants Martin McIntosh, Ricky Stuckey, Jeffery Walls, Leroy Staton, and Robert Graham[3] proceeded to trial before the Honorable Edward B. Cottingham, Circuit Court Judge ("the trial/sentencing court") and a jury. William B. Rogers, Esquire, represented Petitioner at trial. The case was prosecuted by Solicitor Ralph Wilson. Petitioner was found guilty of murder, kidnapping, and conspiracy on March 18, 1997. Petitioner was sentenced by Judge Cottingham to life imprisonment for murder, no sentence on the kidnapping charge (based on S.C. Code Ann. § 16-3-910), and five years for criminal conspiracy by. *See* App., ECF Nos. 24-1 through 24-16, for transcript of trial and pretrial conference.

2. Direct Appeal

Represented by Joseph Savitz, Esquire, of the South Carolina Office of Appellate Defense, Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals. In his Brief to the Court of Appeals, Petitioner raised the following issues: (1) The trial judge erred in denying appellant's motions for directed verdict; and (2) The trial court erred in refusing to grant a severance. Final Br. Appellant 3; ECF No. 24-18. The State filed a responsive brief. ECF No. 24-19. On November 8, 2001, the Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished Opinion. *State v. Alfonzo Staton*, Unpub. Op. No. 2001-UP-477 (Ct. App. filed Nov. 8, 2001); ECF No. 24-20. Represented by Mr. Savitz, Petitioner filed a Petition for Writ of Certiorari to the Supreme Court of South Carolina, ECF No.

---

[3] Eleven defendants were charged with at least some crime in the kidnapping, rape, and murder of Darlene Patterson. In addition to Petitioner and his co-defendants listed above, the other defendants were: state's witnesses Danny Davis, Robert Ransom, and Dwayne Sloan, as well as Ringo Pearson and Robert Lee Whitfield. Ringo Pearson eventually pleaded guilty to murder. *See* Resp't's Return and Mot. Summ. J. 2 & n.2, ECF No. 24.

24-21, which the State opposed, ECF No. 24-22. The South Carolina Supreme Court denied Petitioner's Petition for Writ of Certiorari on November 21, 2002, ECF No. 24-24, and the Remittitur was issued on November 25, 2002, ECF No. 24-25.

       3.      Rule 29(b), SCRCrimP Motion[4]

On May 6, 2009, pursuant to Rule 29(b), SCRCrimP, Petitioner filed a Motion for a New Trial Based on After-Discovered Evidence (hereinafter "Rule 29(b) Motion"). The court has not been provided a copy of the Rule 29(b) Motion or the transcript of the hearing on that Motion. Based on the parties' representations in their briefs on the Motion to Stay and the Orders regarding the Motion, following is the court's understanding of the basis for the Rule 29(b) Motion: Petitioner moved for a new trial pursuant to Rule 29(b), SCRCrimP, "based upon alleged after discovered evidence, that being a conflict of interest by his trial defense attorney, Will Rogers, Esq.[,] who at the time was a new prosecutor for the Fourth Circuit Solicitor's Office." Oct. 20, 2011 Order denying Rule 29(b) Mot 1; ECF No. 1-1 at 14-15. Rogers indicated he let all of his clients know he was asking to be relieved from his cases because of his new position with the Solicitor's Office. A judge relieved Rogers as counsel on January 28, 1997, and signed and entered an Order relieving Rogers on January 29, 1997. *Id.* On January 30, 1997, the judge "rescinded that Order as to [Petitioner] and that matter was placed on record." *Id.*[5] Petitioner indicated he had not been aware of Rogers' conflict or his position as an assistant solicitor at the time of trial and that he did not learn of the conflict until "sometime in 2007." *Id.*

---

[4] Chronologically, Petitioner's Rule 29(b) Motion followed his 2003 PCR Application. However, because the Rule 29(b) Motion is part of the direct criminal matter involving Petitioner, the court includes it here.

[5] The record available to the court does not contain the January 29, 1997 Order relieving Rogers, nor does it contain transcripts of either hearing or record-entry referenced.

The Rule 29(b) Motion was heard in October 2011 before the Honorable Howard P. King. For this hearing Petitioner was represented by Will E. Grove of the Office of Public Defender for the Fourth Judicial Circuit of South Carolina. Judge King issued a written Order denying the Rule 29(b) Motion on October 19, 2011, which was served on Petitioner on January 4, 2012. ECF No. 24-36. Petitioner filed a Motion for Reconsideration, which Judge King denied in an Order dated January 15, 2012, and filed January 19, 2012. ECF No. 24-37. Petitioner filed a Notice of Appeal of this Order on February 13, 2012. *See* Mot to Stay 2, ECF No. 43. On March 27, 2012, the Court of Appeals dismissed this appeal "[d]ue to the failure of Appellant to timely serve opposing counsel[.]" Order (Mar. 27, 2012); ECF No. 24-38. Petitioner filed a Petition to Reinstate Appeal on April 3, 2012. ECF No. 43-2 at 8-10. The South Carolina Court of Appeals denied this request on September 7, 2012. ECF No. 43-2 at 11 (denying "petition for rehearing"). On September 21, 2012, Petitioner filed a Petition for Writ of Certiorari to the Supreme Court of South Carolina. *See* ECF No. 43-3. The State filed a return on October 30, 2012. *See* ECF No. 43-4. As of May 1, 2013, the Petition for Writ of Certiorari remained pending. *See* Mot. 3, ECF No. 43.[6]

      B.      State PCR Proceedings

           1.      2003 Post-Conviction Relief ("PCR") Application

Petitioner filed an application for PCR on July 10, 2003. (2003-CP-34-0244). The State filed a Return to the PCR application on November 3, 2003. In the application, Petitioner alleged the following grounds:

---

[6] Respondent's Motion for Summary Judgment does not reference the Petition to Reinstate Appeal or the Petition for Writ of Certiorari as to the Rule 29(b) Motion. Respondent's response to the Motion to Stay does not reference the pending writ of certiorari to the Supreme Court of South Carolina regarding this appeal.

      1. Ineffective assistance of trial counsel:
          a. Failed to object to indictment.
          b. Failed to object to improper evidence.
          c. Failed to subpoena alibi witnesses.
   2. Subject matter jurisdiction.
   3. Prosecutorial misconduct.

PCR Appl., App. 1758-63.

An evidentiary hearing into the matter was convened on January 11, 2005 at the Darlington County Courthouse before the Honorable John Milling, Circuit Court Judge ("the PCR Court"). App. 1778-1887 (PCR hr'g tr.). Petitioner was present at the hearing and was represented by Candice A. Liveley, Esquire. Karen C. Ratigan, Esquire of the South Carolina Office of the Attorney General represented Respondent. On September 16, 2005, the PCR Court issued an Order of Dismissal denying and dismissing the PCR application with prejudice. App. 1888-1903.

      2. Appeal of the 2003 PCR

Petitioner appealed the denial of his PCR application. For the appeal of his PCR Petitioner was represented by Wanda Carter, Esquire, and the State was represented by Karen Ratigan, Esquire. Petitioner raised the following six issues to the Supreme Court of South Carolina:

- Did trial counsel err in failing to present an alibi defense?
- Did trial counsel err in failing to object to hearsay testimony from Dwayne Sloan?
- Did trial counsel err in failing to object to defects in the indictment?
- Did trial counsel err in failing to preserve the error regarding the solicitor's golden rule argument for appellate review?
- Did trial counsel err in failing to object to the solicitor's comments about religion during closing argument?
- Did trial counsel err in failing to object when the solicitor vouched for the credibility of State witnesses?

Pet. Writ Cert. 2-3, ECF No. 24-26. The State filed a Return to the Petition for Writ of Certiorari. ECF No. 24-27. The Supreme Court of South Carolina granted certiorari on the two issues related to the solicitor's argument, which the parties briefed. *See* ECF Nos. 24-28 through 24-33. On March 6, 2009, the Supreme Court of South Carolina dismissed the appeal, finding certiorari had been improvidently granted. ECF No. 24-34. The Remittitur was issued on March 11, 2009. ECF No. 21-35.

### 3. 2013 PCR

On April 26, 2013, Petitioner filed a PCR application in which his only ground concerns the ineffective assistance of his Rule 29(b) counsel, including counsel's alleged failure to "properly research [and] brief" Petitioner's issues, counsel's failure to notify Petitioner "immediately when [the] 29(b) motion was denied," and his failure to "file an appeal of the dismissing of the 29(b)." 2013 PCR Appl. 3, ECF No. 46-1. Petitioner seeks a belated appeal pursuant to *White v. State*, 208 S.E.2d 35 (S.C. 1974).[7] That PCR matter is pending in the Court of Common Pleas for Marlboro County, 2013-CP-34-00089. *Id.*

### C.    Petitioner's Federal Habeas Petition

Petitioner raises the following grounds in his federal petition for a writ of habeas corpus, as set forth in his Petition:

> Ground One: Court erred in denial of direct verdict on kidnapping and murder.
> Supporting facts: There was no evidence that victim was alive prior to being placed into car or the creek...But there is considerable evidence that she was not alive. The pathologist testified that the victim have died within "a number of minutes after her head

---

[7] In *White*, the Supreme Court of South Carolina found that, when a PCR judge determines an applicant did not freely and voluntarily waive his right to a direct appeal, the PCR applicant may petition the Supreme Court of South Carolina for review of direct-appeal issues. *White*, 208 S.E.2d at 39-40.

7

was wrapped in duct tape, which means she was already dead and a granting of direct verdict would have been necessary.

Ground Two: Ineffective assistance of counsel for failing to subpoena or otherwise call alibi witnesses.
Supporting facts: Petitioner informed his counsel that he had witnesses who could provide him an alibi for the crimes which he's being confined, and requested that they be subpoenaed. Petitioner provided counsel with a list of names of these particular witnesses that would have accounted for petitioner's where abouts on November 12, 1994 and November 13, 1994 for that purposes. Also petitioner informed counsel that his school records would indicate that he was in school during the week of November 14, 1994, in turn would have shown that petitioner was not at scene.

Ground three: Ineffective assistance of Counsel due to counsel failure to object to improper evidence "hearsay evidence"
Supporting facts: It was the state's theory that petitioner was present aiding and abetting Johnny "Ringo" Pearson who actually and physically murdered victim. However, Ringo was not present a petitioner's trial, nevertheless the solicitor (Ralph Wilson) proffered testimony by one of its witnesses Dewayne Sloan, that Ringo confessed to him, and petitioner that he murdered the victim. As Ringo was not present at trial, the admission of Sloan's testimony constituted impermissible hearsay offered for the truth of the matter.

Ground four: Ineffective assistance of counsel for failure to object to misrepresentation of improper dates that was introduced into evidence.
Supporting facts: The date of November 12, 1994, a Saturday, was the only date introduced at trial by the Solicitor for this "one" party where victim was supposedly being held captive. This date was the foundation of the State's case in connecting petitioner to the crimes. Conversely the Solicitor argued in closing that the "one" party had now taken place on November 14, 1994, a Monday. This date was never adduced at trial, and the misrepresentation of the dates was to corroborate the State's witnesses' testimony, because both had testified to the abduction of the victim before she was abducted.

Ground five: Ineffective assistance of counsel for failure to raise and argue defect and constructive amendment of the indictment for murder which deprived court's jurisdiction.
Supporting facts: While there was a variance in the sense of variation between the pleading and proof; the variation destroyed petitioner's substantial right to be tried on charges in the indictment returned by the Grand Jury. Evidence presented at trial was death by asphyxiation. However petitioner was indicted on murder by means of strangulation. Therefore, the indicted charge and the charge petitioner was tried upon were not one and the same. The state failed to prove every essential element of guilt, when Petitioner was indicted for murder by strangulation and trial evidence supposes murder by suffocation.

> Ground six: Ineffective assistance of counsel for failure to object to prosecutorial misconduct and preserving Solicitor's Golden Rule error for Appellate Review.
> Supporting facts: The solicitor used the word you and its variations thirteen times when he asked the jurors to put themselves in the place of victim with respect to her condition. Petitioner's attorney never objected, but one of other defense attorneys objected, but still never got a ruling from the court. The solicitor just continued on, as in taking the ball and running with it, as he kept inflaming the jury. By Petitioner's attorney never objecting he failed to preserve this vital issue for Appellate review.
>
> Ground seven: Ineffective assistance of counsel for failing to object when solicitor vouched for the credibility of the state's witnesses during closing.
> Supporting facts: During closing arguments the solicitor stated " I submit to you, the jury, that everything that Ransom and Davis, the state's witnesses, have told you is the truth." Petitioner complained that counsel failed to object to this error and that this statement affected the jury crucially.
>
> Ground eight: A conflict of interest of trial counsel.
> Supporting facts: Petitioner asserts that his trial counsel was an active employee of the Fourth Circuit Solicitor's office simultaneously to his representation, therefore, creating a actual conflict of interest. Petitioner maintain that his attorney Will B. Rogers placed himself in a situation inherently conducive into divided loyalties and owed duties to parties adverse to that of the Petitioner, by counsel being an active solicitor, but acting defense attorney.

Pet., ECF No. 1 at 5-11, 13-16.

On January 4, 2013, Respondent responded to the Petition by filing a Return and Motion for Summary Judgment, ECF Nos. 24, 25, in which he argues the following: the Petition is untimely; certain grounds are procedurally barred from habeas review; and the Petition should be dismissed on its merits. Petitioner filed the instant Motion to Stay on May 2, 2013. ECF No. 43. With Respondent's consent, the court granted Petitioner's request that he not be required to respond to the pending Motion for Summary Judgment prior to the court's ruling on the Motion to Stay.

II.     Petitioner's Motion to Stay

Citing *Rhines v. Weber*, 544 U.S. 269 (2005), Petitioner asks that the court stay his pending habeas Petition and hold it in abeyance so that he may return to South Carolina's state courts to exhaust his unexhausted claims related to his trial counsel's purported conflict of interest, which is Ground Eight in the Petition. *See* Pet.'s Mot. 6, ECF No. 43.[8] Respondent responds by arguing Petitioner's Petition is time-barred under the limitations period included in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and Petitioner's Rule 29(b) Motion and his appeal from the dismissal of that motion were untimely filed in state court. Resp't's Mem. 1, ECF No. 45. Accordingly, Respondent asserts a stay pursuant to *Rhines* would be inappropriate and submits the court should consider and grant its Motion for Summary Judgment. *Id.*

Generally, a habeas petitioner who presents a mixed petition—one containing exhausted and unexhausted claims—may dismiss the unexhausted claims and proceed with the exhausted claims, or dismiss the entire petition to return to state court to exhaust the unexhausted claims. As discussed within, these options are not without potential roadblocks for a petitioner. Prior to the enactment of the AEDPA, federal courts routinely dismissed without prejudice habeas petitions containing a mixture of exhausted and unexhausted claims, pursuant to *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) (requiring "total exhaustion" of claims and directing courts to

---

[8] Petitioner also briefly asks that the court consider the effect his ongoing state proceedings may have on all issues in his Petition, asserting that a state-court ruling that his Rule 29(b) Motion and Appeal were timely would place his case within the one-year statute of limitations. Mot. 6, n.7. The court offers no substantive ruling at this juncture, but notes a recent case from the Eleventh Circuit Court of Appeals finding that the applicable statute of limitations is applied on a claim-by-claim basis in certain habeas matters. *See Zack v. Tucker*, 704 F.3d 917, 926 (11th Cir. 2013); *Reddic v. Cartledge*, No. 8:12-cv-00232-DCN, 2013 WL 1010327, at n.6 (D.S.C. Mar. 14, 2013) (citing *Zack* and considering timeliness of habeas grounds separate from each other).

effectuate that requirement by dismissing mixed petitions without prejudice and permitting petitioners to return to state court to present the unexhausted claims). In 1996, though, the AEDPA's enactment changed this landscape. Although the statute preserved the total exhaustion requirement, it also added a one-year statute of limitations for habeas matters filed pursuant to 28 U.S.C. § 2554. *See* 28 U.S.C. § 2244(d). Accordingly, dismissal of a "mixed petition" can result in the application of the AEDPA's one-year statute of limitations to a petitioner's claims. *Duncan v. Walker*, 533 U.S. 167, 172 (2001) (filing of federal habeas petition does not toll the limitations period for filing a timely petition under 28 U.S.C. § 2254). Alternatively, a petitioner can proceed with a federal habeas claim of only those claims that have been exhausted with a dismissal of any unexhausted claims. *See Rose v. Lundy*, 455 U.S. at 522. However, the unexhausted claims would later become subject to the successive petition standards under the AEDPA. *See* Rule 9, Rules Governing Section 2254 Cases in USDC: "Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2243(b)(3) and (4)."

Recognizing these changes and the interplay between the one-year limitations period and the requirement of *Lundy* that a district court dismiss a mixed petition so the petitioner may exhaust remedies, the *Rhines* Court noted that some district courts had adopted a procedure of staying the petition and holding it in abeyance while the petitioner returns to state court with his unexhausted claims. 544 U.S. at 275-76. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. Am. Water Works & Elec.*

*Co., Inc.*, 299 U.S. 248, 254 (1936). That discretionary authority to stay mixed petitions in habeas cases, however, "must be compatible with AEDPA's purposes[,]" *Rhines*, 544 U.S. at 276, one of which is "to reduce delays in the execution of state and federal criminal sentences . . . ." *Id.* at 276 (internal citation omitted). Further, the one-year "limitations period quite plainly serves the well-recognized interest in the finality of state court judgments" by restricting the time within which to seek federal habeas review. *Id.* (internal quotations and citations omitted). The tolling provision in § 2244(d)(2)[9] "balances the interest served by the exhaustion requirement and the limitation period." *Id.* The "AEDPA thus encourages petitioners to seek relief from state courts in the first instance by tolling the 1-year limitations period while a 'properly filed' application for State post-conviction review is pending." *Id.* "This scheme reinforces the importance of *Lundy*'s 'simple and clear instruction to potential litigants: before you bring any claim to federal court, be sure that you first have taken each one to state court." *Id.* (citing and quoting *Lundy*, 455 U.S. at 520).[10]

The Court cautioned that the stay-and-abeyance procedure should not be used too frequently because it causes delay, frustrating the statutory objective of encouraging finality and undermining the statute's goal of "streamlining" federal habeas actions by diminishing the incentive to exhaust all claims in state court before filing a federal habeas petition. 544 U.S. at

---

[9] The tolling provision, § 2244(d)(2), provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

[10] The *Lundy* Court also noted, "[e]qually as important, federal claims that have been fully exhausted in state courts will more often be accompanied by complete factual record to aid the federal courts in their review. *Cf.* 28 U.S.C. § 2254(d) (requiring a federal court reviewing a habeas petition to presume as correct factual findings made by a state court)." 455 U.S. at 519 (citation and parenthetical in original).

277. A stay is appropriate, however, when (1) there is good cause for failing to first exhaust claims in state court, (2) the unexhausted claims are not plainly meritless, and (3) there are no intentionally dilatory litigation tactics by the petitioner. *Id.* at 277-78.[11] The Court reasoned that in such circumstances the petitioner's interest in obtaining federal review outweighs the twin interests of speedy review and finality. *Id.*

    A. Whether Petitioner Had Good Cause for Filing Federal Petition Before Exhaustion

Petitioner submits he is entitled to a stay pursuant to *Rhines*, first arguing he can demonstrate good cause for filing this Petition before exhausting the claim raised in Ground Eight of his Petition and now pending before the South Carolina courts. Pet.'s Mem. 4-6, ECF No. 43. *See Rhines*, 544 U.S. at 277 ("stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."). *Rhines* does not define good cause. Petitioner cites to language in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), that "a petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." Pet.'s Mem. 4 (quoting *Pace*). He submits facts surrounding the Rule 29(b) Motion and its appeal caused sufficient confusion to establish "good cause" here.

*Pace* did not concern a mixed petition, but addressed whether a state PCR application denied as untimely would qualify as "properly filed" under the federal habeas tolling statute, 28 U.S.C. § 2244(d)(2). 544 U.S. at 410. In dicta, the *Pace* Court noted a petitioner who has "reasonable confusion" as to whether a state PCR application is timely filed (thus, whether it will

---

[11] The Court stated it would likely be an abuse of discretion to deny a stay if a petitioner shows good cause, potentially meritorious unexhausted claims, and no indication of intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 278.

be considered "properly filed" under 28 U.S.C. § 2244(d)(2)), may consider filing a "protective" federal habeas petition and seeking a *Rhines* stay. 544 U.S. at 416. The Court noted that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Id.* The discussion in *Pace* does not address circumstances involving a mixed petition, but does indicate that a "reasonable confusion" about the timeliness of the filing in state court ordinarily would be "good cause" for failure to exhaust.

As explained by Petitioner, he received the order denying reconsideration of the denial of his Rule 29(b) Motion based on after-discovered evidence on January 24, 2013. Pet.'s Mem. 5; *see* ECF No. 1-1 at 16 (Order). Petitioner also received a letter dated January 24, 2013, from Will Grove, his appointed attorney for the Rule 29(b) Motion, stating the following:

> I did not file an appeal of the judge's ruling on your motion to reopen the case because of a conflict. However, the judge did not rule on your issue of new evidence, which was included towards the back of the motion. This is the issue I'd like to present in front of a judge for consideration.
>
> Once I have it scheduled, I will let you know if that motion fails then an appeal of that motion can be filed.

Ltr. from Grove to Pet. (Jan. 24, 2013), ECF No. 1-1 at 16. Petitioner submits this letter caused him "reasonable confusion" regarding whether filing an appeal of the motion for a new trial based on after discovered evidence would be timely. In fact, as Petitioner points out, the State has argued that the February 13, 2012 Notice of Appeal was not timely filed pursuant to Rule 203(b)(2), SCACR. *See* Resp't's Return to Pet. Cert. as to Appeal of Rule 29(b) Denial, ECF No. 43-4. Further, Petitioner points out his uncertainty/confusion regarding whether the appeal would be timely also prompted him to file an application for PCR regarding the alleged ineffectiveness

14

of his Rule 29(b) appointed counsel in which he seeks permission to file a belated appeal pursuant to *White v. State*, 208 S.E.2d 35 (S.C. 1974). Pet.'s Mem. 5, ECF No. 43; *see* ECF No. 46-1 (2013 PCR Appl.).

Petitioner also provides a letter he sent to the Clerk of the South Carolina Court of Appeals on April 15, 2012, explaining he had not received certain paperwork regarding his appeal and requesting that counsel be appointed. *See* Pet'r's Mem., 5-6, ECF No. 43; Apr. 15, 2013 Ltr. from Petitioner to Clerk of Court of Appeals, ECF No. 43-1. He submits this further indicates his "reasonable confusion" regarding whether his appeal of the denial of his Rule 29(b) Motion was timely. Based on this uncertainty, Petitioner submits he "erred on the side of caution" and filed the instant Petition. Pet'r's Mem. 6.

Other than generally stating Petitioner "fails to meet any of the requirements" of *Rhine*, Resp't's Mem. 3, ECF No. 45, Respondent does not specifically argue that Petitioner has not shown "good cause" for filing his federal habeas Petition prior to fully exhausting issues raised in Ground Eight of the Petition.

Based on the factual information presented, the undersigned is of the opinion that Petitioner has satisfied the good-cause prong of *Rhine*. The letter from Petitioner's appointed Rule 29(b) counsel regarding the potential appeal of the denial of the Rule 29(b) Motion is not a model of clarity. *See* ECF No. 1-1 at 17. Petitioner's confusion on whether an appeal regarding the Rule 29(b) Motion was timely is "reasonable" and well-indicated by his filings and letters. His "protective" filing of this federal petition in August 2012, while his appeal was pending, was appropriate. *Rhines*, 544 U.S. at 273-78; *cf. Pace*, 544 U.S. at 410; *see generally Terry v. Byars*,

C.A. No. 4:12-1798-SB-TER, 2012 WL 6102938, at *6 (Dec. 10, 2012) ("The ultimate uncertainty of the state court's disposition of the claim qualifies for good cause under *Rhines*.").

    B. Whether the Unexhausted Grounds Are Plainly Meritless

The second consideration when considering a stay as set forth in *Rhines* is that the unexhausted claim or claims must not be meritless. *Rhines*, 544 U.S. at 277 ("[E]ven if a petitioner had good cause for [failing to present his claims first to the state courts], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."). In support of his argument that his unexhausted claim is not "plainly meritless," Petitioner begins: "It is hard to imagine a more egregious conflict of interest than to have the prosecuting attorney, represent a criminal defendant in the same county that he tries cases. Certainly, [Petitioner's trial counsel] would have been hesitant to present the reasonable alternative defense that the law enforcement he worked with coerced his testifying codefendants." Pet'r's Mem. 6. Petitioner's principal and reply briefs include substantive argument regarding the relative merits of the conflict-of-interest issue raised as Ground Eight in the instant Petition. *See id.* at 6-7, ECF No. 43; Pet'r's Reply 2-5.

Respondent counters that Petitioner's "claim of after-discovered evidence is plainly meritless[,]" noting the state court found, as a matter of state law, that Petitioner's claim that his trial counsel had a conflict of interest while representing him is not a claim of after-discovered evidence under South Carolina law. Resp't's Mem. 1, ECF No. 45. Respondent cites to findings by the state trial court on the Rule 29(b) Motion, as well as the findings of the Court of Appeals that the appeal from the denial of the Rule 29(b) Motion was untimely. *Id.* at 1-2. Respondent further submits the unexhausted claim is meritless as Petitioner did not raise it on appeal or in his

initial PCR, making it procedurally defaulted at the state court level. *Id.* at 2. Respondent also cites generally to his pending Motion for Summary Judgment and includes a blanket argument that the Motion to Stay should be denied because Petitioner's Petition is time-barred in its entirety.

In his Reply, Petitioner accurately points out that Respondent's arguments focused on the untimeliness of his Rule 29(b) Motion and appeal of same hinge on both factual and legal findings *that are still on appeal in South Carolina courts*. Pet'r's Reply 1-3. Accordingly, Petitioner submits the arguments do not show a lack of merit. *Id.* Further, Petitioner submits the court is to consider whether the *substantive* claim raised in Ground Eight itself is "plainly meritless," and need not dwell on Respondent's focused argument that the Rule 29(b) motion was untimely under South Carolina law. *See* Reply 4-5, n.8.

Based on the factual information available to the court, it cannot determine that Petitioner's unexhausted claim is "plainly meritless." Although the Order denying the Rule 29(b) Motion and the Order denying reconsideration include findings that the issue of Petitioner's trial counsel's affiliation with the prosecutor's office was raised prior to his trial and could have been raised then, *see* ECF No. 1-1 at 14-16, those Orders are on appeal, as noted above. Further, the record does not include sufficient information for the court to determine what was or was not raised prior to trial, or what was or was not raised in the Rule 29(b) Motion.

In addition, even if the Supreme Court of South Carolina denies the pending Petition for Writ of Certiorari concerning the timeliness of the appeal regarding the Rule 29(b) Motion's denial, another proceeding is pending in state court that relates to Petitioner's unexhausted claim: his recently filed PCR application claiming his Rule 29(b) counsel was ineffective and seeking a

17

belated appeal of the denial of the Rule 29(b) Motion. Respondent's short argument, Resp't's Mem. 3 n.3, that any belated appeal Petitioner may receive is similarly meritless is also unavailing. That argument supposes Petitioner "could have raised" the unexhausted claim on direct appeal or in his first PCR application but did not. *Id.* Again, this presupposes facts not finally decided below and not fully available to this court. Although Respondent's arguments may eventually bear out, Petitioner's claims cannot be branded "meritless" by this court at this juncture.

To the extent there are questions about Petitioner's ability to proceed in the pending state court proceedings, such questions are best resolved there. The court finds no reason to prematurely foreclose Petitioner's opportunities here, while these issues are now pending before the state court, whose determination it is to make. In light of *Rhines*, it seems that when a state court is willing to consider a prisoner's claims, there is no legitimate federal interest in impairing access to that consideration by refusing a stay.[12] *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."); *Lundy*, 455 U.S. at 518 ("The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.") (internal citation omitted). Here, the court is unwilling to speculate regarding the issues now before the state courts. *See Robertson v. Ozmint*, C.A. No. 2:11-63-SB-BHH, ECF No. 44 (D.S.C. Apr. 8, 2011) (granting

---

[12] These recommendations are informed by the specific facts and posture of this habeas matter. This Report and Recommendation should not be read to suggest there could not be situations in which procedural inadequacies of a petitioner's pending appeal or PCR application might inform the analysis of a ruling on a *Rhines*-based motion.

motion to stay under *Rhines* and noting preference for state court to consider issues regarding time bars and other procedural issues raised by respondent).

    C.  Whether Petitioner is Engaging in Intentional Dilatory Litigation Tactics

*Rhines*' third and final prong requires the court to consider whether a petitioner seeking a stay has "deliberately engage[d] in dilatory tactics" that "could frustrate the AEDPA's goal of finality by dragging out indefinitely their federal habeas review." 544 U.S. 277-78. Although *Rhines* focused this prong on capital petitioners, *id.*, the court considers it here.

Petitioner submits that he has no history of stalling or otherwise attempting to manufacture delay. He filed his first PCR seven months after certiorari was denied on his direct appeal. When certiorari was denied on his PCR appeal, he filed a motion for a new trial based on after-discovered evidence two months later. This is not the record of a petitioner who is trying to stall or delay. Pet'r's Mem. 7-8.

Respondent does not specifically address this prong of *Rhines* (other than generally stating Petitioner cannot satisfy any prong). Based on the record presented, it does not appear that Petitioner, pro se or through counsel, has engaged in any deliberately dilatory tactics. Accordingly, the undersigned finds Petitioner has satisfied this prong of the *Rhines* analysis, as well.

The court is mindful of the warnings in *Rhines* that stays should be available only in limited circumstances and, if employed too frequently, have the potential to undermine the AEDPA purposes of finality and speedy resolution of federal claims. However, under the unique facts and circumstances of this case, the undersigned is of the opinion that a *Rhines* stay is appropriate. Furthermore, in addition to satisfying the factors set forth in *Rhines*, a more

19

complete factual record to aid this court's review may be available after his pending appeal and second PCR are concluded in state court. *See Lundy*, 455 U.S. at 519 (noting under comity principles the important interest in a state court's complete factual record and citing 28 U.S.C. § 2244(d) (presumption of correctness of factual findings made by a state court)); *see also id.* at 522 (total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief").

III.  Conclusion

Accordingly, it is recommended that Petitioner's Motion to Stay, ECF No. 43, be *granted*. Based on this recommendation, the undersigned further recommends Respondent's Motion for Summary Judgment, ECF No. 24, be *denied without prejudice* so Respondent can refile any appropriate dispositive motions after the stay is lifted.

It is further recommended that, should the United States District Judge adopt this recommendation, counsel for Petitioner be required to submit a status report to the court within 14 days of the final decision regarding the pending appeal and within 14 days of the final decision in Case No. 2013–CP–34–00089. *See Rhines*, 544 U.S. at 278. At that time, the court will issue briefing instructions regarding this habeas matter.

IT IS SO RECOMMENDED.

June 13, 2013     Kaymani D. West
Florence, South Carolina     United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**